UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

KONINKLIJKE PHILIPS ELECTRONICS N.V. and U.S. PHILIPS CORPORATION,

Plaintiffs,

v.

Optical Disc Solutions, Inc. and John Does No. 1 through 100,

Defendants.

10 CV 1635

Civil Action No. _____

## COMPLAINT

Plaintiffs Koninklijke Philips Electronics N.V. and U.S. Philips Corporation allege as follows based upon knowledge as to their own acts, and upon information and belief as to all other allegations:

1.  This is an action for breach of contract under the laws of the State of New York and, in the alternative, patent infringement under 35 U.S.C. 271 *et seq.*

### The Parties

2.  Plaintiff Koninklijke Philips Electronics N.V. is a corporation organized under the laws of The Netherlands with its principal place of business in Eindhoven, The Netherlands. Plaintiff U.S. Philips Corporation is a corporation organized under the laws of Delaware with its principal place of business at 3000 Minuteman Road, M/S 109, Andover, MA 01810, and an office at 345 Scarborough Rd., Briarcliff Manor, New York. Plaintiffs Koninklijke Philips Electronics N.V. and U.S. Philips Corporation are collectively referred to as "Philips."

3.  Defendant Optical Disc Solutions, Inc. ("ODS") is a corporation organized under the laws of Delaware, with a principal place of business at 1767 Sheridan Street, Richmond, Indiana.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____

4.  Defendants John Doe No. 1 through John Doe No. 100 inclusive are or may be entities related to ODS, or customers or principals of ODS, the identities of which are unknown at this time.

## Jurisdiction and Venue

5.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), and 1367(a), and 35 U.S.C. §§ 271 and 281.

6.  Venue in this Court is proper under 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

7.  This Court has personal jurisdiction over ODS under the New York Long Arm Statute, N.Y. C.P.L.R. 301, 302, 313 (McKinney 2007), and Fed. R. Civ. P. 4(e)(1).

8.  ODS has committed acts of patent infringement in this judicial district.

9.  ODS has irrevocably waived any objections to the jurisdiction, process, and venue of this Court, and to the effectiveness, execution, and enforcement of any order or judgment (including a default judgment) with respect to the ODS Agreement and Side Letter identified in ¶ 19 of this Complaint.

10. ODS is subject to personal jurisdiction in this district because it purposefully engaged in activities that gave rise to this claim for patent infringement, which were directed at residents of New York and this judicial district.

11. ODS voluntarily placed unlicensed CD-Discs (as defined in ¶ 21) into the stream of U.S. commerce, conscious that New York and this judicial district were the likely destination of a substantial quantity of those unlicensed CD-Discs.

## Facts Related to Philips

12. Philips and its related companies have engaged for many years in research and development ("R&D") of systems in which signals encoded in digital form and stored on a disc are read and reproduced by means of devices using an optical read-out beam.

13. One of the achievements of such R&D efforts was a revolutionary high-fidelity sound storage and reproduction system, known as the Compact Disc Digital Audio System ("CD-Audio System").

14. Philips and Sony Corporation ("Sony") developed the Compact Disc Data System ("CD-ROM System") from the CD-Audio System.

15. Philips and Sony also developed a multi-session CD system, known as the Enhanced Music Compact Disc System ("Enhanced Music CD System" or "CD Extra System").

16. The CD-Audio System, CD-ROM System, and CD Extra System are referred to collectively in this Complaint as the "CD Systems".

17. U.S. Philips Corporation is the owner by assignment of all right, title, and interest in U.S. Patent No. 5,068,846, entitled "Reflective, Optical Record Carrier," relating to the CD Systems ("the '846 patent"). The '846 patent was duly and legally issued by the U.S. Patent and Trademark Office on November 26, 1991, after full and fair examination, and was valid and subsisting in the United States at all times relevant to this action. The '846 patent expired on November 26, 2008. A true copy of the '846 patent is attached as **Exhibit A**.

18. The CD Systems are defined by "Standard Specifications", namely, the CD-Audio Standard Specifications, CD-Audio Maxi-Single Standard Specifications, CD-ROM Standard Specifications, CD-ROM-XA Specifications, and the Enhanced Music CD Standard Specifications.

## Facts Related to Defendant

19.    Effective July 1, 2002, Philips and Sanyo Laser Products, Inc. ("Sanyo") entered into a "CD Disc Patent License Agreement." **(Exhibit B)** Effective July 1, 2002, Philips entered into a "Side Letter" with Sanyo (**Exhibit C**), and under ¶ 1 thereof the Side Letter is "a legally binding and integral part of the Agreement." On March 31, 2005, the stock of Sanyo was sold to Austerman Holdings, LLC, an Indiana Limited Liability Company. In conjunction with the sale of such stock, Sanyo changed its name to Optical Disc Solutions, Inc. The CD Disc Patent License Agreement provides that it may not be assigned by the licensee without Philips' written consent. In a letter dated July 18, 2006, Philips provided such consent and agreed that the CD Disc Patent License Agreement was assigned by Sanyo to Optical Disc Solutions, Inc. effective March 31, 2005. **(Exhibit D)** The parties to the July 1, 2002 CD Disc Patent License Agreement and the Side Letter between Philips and Sanyo therefore are now Philips and the Defendant named in this action, Optical Disc Solutions, Inc. Such CD Disc Patent License Agreement is referred to in this Complaint as the "ODS Agreement."

20.    In the ODS Agreement, Philips grants ODS rights under certain patents related to CD Systems to manufacture "Licensed Products" in the United States, its territories, and possessions, in accordance with the relevant CD Standard Specifications, and to sell or otherwise dispose of such Licensed Products in all counties of the world.

21.    The ODS Agreement identifies the Standard Specifications for CD System discs, specifically, "CD-Audio Discs", "CD-Audio Maxi-Singles", "CD-ROM Discs", and Enhanced Music CD Discs/CD Extra Discs. Such CD System discs are referred to collectively in this Complaint as "CD-Discs".

22.  Paragraph 1.15 of the ODS Agreement defines "Licensed Product" as "a CD-Audio Disc, a CD-Audio Maxi-Single, a CD-ROM Disc and/or a CD Extra Disc, as correspond with the Licensed Patents selected by Licensee pursuant to Article 1.16, manufactured and/or sold in accordance with the provisions hereof, which has been duly reported and on which the royalties due hereunder are paid in accordance with the provisions of this Agreement."

23.  Paragraph 1.16 of the ODS Agreement defines "Licensed Patents" as "the patents listed in the relevant Exhibits as selected by Licensee pursuant to" five "Options", Options A1 through A5. Each Option corresponds to a different type of CD-Disc defined in ¶¶ 1.02 through 1.05 of the ODS Agreement, made in compliance with the Standard Specifications for each type of CD-Disc defined in ¶¶ 1.06 through 1.09 of the ODS Agreement. Option A1 states that "Licensee chooses the essential patents listed in Exhibit E1, for the use of any one or more of these patents, exclusively for the manufacture and/or sale of CD-Audio Discs and/or CD-Audio Maxi Singles, which conform to the CD-Audio Standard Specifications." Using identical language, Options A2 and A3 cover:

> Option A2: Exhibits E1 and E2 for CD-ROM Discs conforming to the CD-ROM Standard Specifications;
>
> Option A3: Exhibits E1, E2, and E3 for CD Extra Discs conforming to the Enhanced Music CD Standard Specifications.

Option A4 states that "Licensee chooses, in addition to Option A1 and/or A3 the essential patents listed in Exhibit E4, for the use of any one or more of these patents, exclusively for the manufacture and/or sale of CD-Discs, excluding CD-ROM Discs, containing CD Text information." Option A5 states that "Licensee chooses the non-essential patents listed in Exhibit

E5, for the use of any one or more of these patents, exclusively for the manufacture and/or sale of CD Extra Discs."

24. Under ¶ 1.16 of the ODS Agreement, Licensed Patents identified in Exhibit E1 cover all CD-Discs under Options A1 through A4.

25. The '846 patent was listed in Exhibit E1 of the ODS Agreement when that agreement was assigned to ODS, effective March 31, 2005. The '846 patent expired on November 26, 2008, and was listed in Exhibit E1 of the ODS Agreement at the time of its expiration, and therefore was a Licensed Patent applicable to all CD-Discs manufactured and/or sold by ODS under Options A1 through A4 of the ODS Agreement from March 31, 2005 through November 26, 2008.

26. Under ¶ 1.16 of the ODS Agreement, Philips agreed to commission an independent expert to review the patents listed in Exhibits E1 through E4 of the ODS Agreement to confirm that each patent is "essential" to the manufacture and sale of CD-Discs made according to the Standard Specifications. Philips did so.

27. Under ¶ 1.16 of the ODS Agreement, the term "essential" as used in relation to Licensed Patents means "patents, the use of which is necessary (either directly or as a practical matter) for compliance with the Standard Specifications defining the relevant CD System(s)."

28. The independent expert commissioned by Philips determined that the '846 patent was an essential patent and was properly listed in Exhibit E1 of the ODS Agreement.

29. ODS's predecessor in interest under the ODS Agreement selected Options A1, A2, A3, and A4.

30. Under ¶ 2.01 of the ODS Agreement, Philips grants to ODS "a non-exclusive, non-transferable license under the Licensed Patents" (listed in the Exhibits corresponding to the

6

Options selected by ODS's predecessor) "to manufacture Licensed Products" "in accordance with the . . . Standard Specifications" set forth in ¶¶ 1.06 through 1.09 of the ODS Agreement, within the United States and its territories and possessions, "and to sell or otherwise dispose of Licensed Products so manufactured in all countries of the world."

31. Under ¶ 5.02 of the ODS Agreement, ODS promises to "pay to Philips a royalty on each Licensed Product sold by Licensee, in which any one or more of the Licensed Patents is (are) used, irrespective of whether such Licensed Patent(s) is (are) used in the country of manufacture, sale or other disposal."

32. Before the '846 patent expired, the '846 patent was used in the United States by ODS to make Licensed Products, namely, CD-Discs that conform to the Standard Specifications. During the term of the '846 patent, CD-Discs that conformed to the Standard Specifications could not be made by ODS without using such patent.

33. The '846 patent existed in the United States at all times relevant to this action.

34. With respect to the royalty required by the ODS Agreement, ODS agrees to pay Philips the "Standard Rate" of 3 cents (3¢) per CD-Audio Disc or CD-ROM Disc with an outer diameter greater than 90 mm, and 2 cents (2¢) per CD-Audio Disc or CD-ROM Disc with an outer diameter smaller than 90 mm, as defined in ¶ 5.02 of the ODS Agreement.

35. With respect to CD-Discs sold on or after the ODS Agreement was assigned to ODS effective March 31, 2005, Philips permitted ODS to pay the "Compliance Rate" of 1.75 cents (1.75¢) per CD-Audio Disc or CD-ROM Disc with an outer diameter greater than 90 mm, and 1.15 cents (1.15¢) per CD-Audio Disc or CD-ROM Disc with an outer diameter smaller than 90 mm, also as defined in ¶ 5.02 of the ODS Agreement, provided that ODS met the "Compliance Requirements" specified in the ODS Agreement and Side Letter.

36.     Paragraph 5.02 of the ODS Agreement further provides that "[i]n the event that Licensee fails to comply at any time with any of its obligations" under such Agreement, "the Standard Rates, as applicable, shall apply to Licensee's manufacture and sale of CD-Discs instead of the Compliance Rates, as applicable, with immediate effect from the moment of such non-compliance until such moment that Licensee's non-compliance will have been remedied in full."

37.     Paragraphs 5.03 and 5.10 of the ODS Agreement require ODS to submit quarterly "Royalty Reporting Forms" to Philips listing all CD-Discs that they manufacture and sell or otherwise dispose of, and to keep complete and accurate books and records relating to ODS's manufacture and sale or other disposal of CD-Discs. Paragraphs 5.03 and 5.10 of the ODS Agreement require ODS to keep accurate books and records relating to the manufacture and sale or other disposal of all CD-Discs that correspond to the types of CD-Discs selected by ODS under the Options set forth in ¶ 1.16 of the ODS Agreement, for which at least one Licensed Patent remains in force in any country of the world, and to report such information to Philips, specifically (1) the quantities of each such selected type of CD-Discs manufactured by ODS, specified per individual type of CD-Disc, (2) the quantities of each such selected type of CD-Discs purchased from other licensed manufacturers, specified per individual type of CD-Disc, (3) on a per-country basis, specifying for each individual type of CD-Disc the quantities of CD-Discs sold or otherwise disposed of, or sold to other manufacturers duly licensed by Philips, specifying the identity of the buyers and such other manufacturers and the trademarks used on or in connection with such CD-Discs, as the case may be, and (4) a computation of the royalties due under the ODS Agreement.

38.     Under ¶ 5.03 of the ODS Agreement, ODS is required to report and pay royalties due to Philips within 30 days after the end of each calendar quarter, and to comply with the other reporting requirements of that provision.

39.     Under ¶ 6.01 of the ODS Agreement, ODS is required to submit to Philips a yearly report of all adjustments to its manufacturing equipment during the preceding year, and to submit to Philips the details of any acquisitions, transfers, or disposals of its manufacturing equipment used for the manufacture of Licensed Products, at the time of such acquisition, transfer, or disposal.

### Facts Relating to Breach of Contract Claim

40.     ODS's predecessor in interest under the ODS Agreement selected Options A1, A2, A3, and A4. To be Licensed Products, selected CD-Discs must be manufactured and sold in compliance with the corresponding Standard Specifications and the provisions of the ODS Agreement, such sales must be reported to Philips, and royalties for the sale of such CD-Discs must be paid to Philips. For example, a CD-Audio Disc is defined by ¶ 1.02 of the ODS Agreement to "mean a Disc [as defined in ¶ 1.01 of the ODS Agreement] comprising audio information encoded in digital form, which is optically readable by a CD-Audio Player [as defined in ¶ 1.11 of the ODS Agreement] and which conforms to the CD-Audio Standard Specifications [as defined in ¶ 1.06 of the ODS Agreement]." Paragraph 1.06 of the ODS Agreement defines the CD-Audio Standard Specifications to "mean the specifications for the CD-Audio System [as defined in the second "Whereas" clause of the ODS Agreement], including" "the Subcode/Control and Display System, Channels R.W, Chapter 5.8, The CD-TEXT mode, as made available, modified or extended from time to time."

41.     Under ¶ 2.01 of the ODS Agreement, ODS is licensed only to manufacture selected Licensed Products "**in accordance with the relevant CD Standard Specifications** and to sell or otherwise dispose of such Licensed Products **so manufactured** in all countries of the world." (Emphasis added.)

42.     Because the '846 patent was essential and existed in the United States at all times relevant to this action, under ¶ 5.02 of the ODS Agreement, ODS was required to pay Philips either the Standard Rates or the Compliance Rates for each CD-Disc sold or otherwise disposed of by ODS in the U.S.

43.     Beginning in or about April 1, 2005, ODS began paying royalties under the ODS Agreement, according to the Compliance Rates.

44.     Beginning on or about April 1, 2005, ODS failed to pay royalties for each and every CD-Disc made and sold in the U.S., and has so admitted. In a December 29, 2009 email from Fred Austerman to Philips, ODS admitted paying royalties only through April 1, 2005.

45.     ODS has continued to make and sell at least 88 million CD-Discs in the U.S., without providing royalty reports and/or paying royalties to Philips.

46.     The CD-Discs made and sold by ODS for which ODS failed to pay royalties to Philips have been and are available for purchase on the open market in the U.S., and within the district.

47.     ODS does not contest that the CD-Discs it has made and sold in the U.S. after it stopped paying royalties to Philips comply with the relevant Standard Specifications.

48.     ODS has failed to submit quarterly "Royalty Reporting Forms" to Philips listing all CD-Discs that it manufactured and sold, has failed to submit complete and/or accurate quarterly "Royalty Reporting Forms" to Philips listing all CD-Discs that it manufactured and sold, and/or to keep complete and accurate books and records, relating to ODS's manufacture and sale or

other disposal of all CD-Discs in the U.S., as required by ¶¶ 5.03 and 5.10 of the ODS Agreement.

49. ODS failed to keep accurate books and records relating to the manufacture and sale or other disposal of all CD-Discs that correspond to the types of CD-Discs selected by ODS under the Options set forth in ¶ 1.16 of the ODS Agreement, for which at least one Licensed Patent remains in force in any country of the world, and to report such information to Philips, specifically (1) the quantities of each such selected type of CD-Discs manufactured by ODS, specified per individual type of CD-Disc, (2) the quantities of each such selected type of CD-Discs purchased from other licensed manufacturers, specified per individual type of CD-Disc, (3) on a per-country basis, specifying for each individual type of CD-Disc the quantities of CD-Discs sold or otherwise disposed of, or sold to other manufacturers duly licensed by Philips, specifying the identity of the buyers and such other manufacturers and the trademarks used on or in connection with such CD-Discs, as the case may be, and (4) a computation of the royalties due under the ODS Agreement, as required by ¶¶ 5.03 and 5.10 of the ODS Agreement.

50. ODS failed to report and pay royalties due to Philips within 30 days after the end of each calendar quarter, as required by ¶ 5.03 of the ODS Agreement. Specifically, ODS failed to report royalties within 30 days after the end of each calendar quarter for at least 11 calendar quarters, and ODS failed to pay royalties within 30 days after the end of each calendar quarter for at least 17 calendar quarters. ODS also failed to comply with the reporting requirements of ¶ 5.03 of the ODS Agreement.

51. ODS failed to submit to Philips a yearly report of all adjustments to its manufacturing equipment during the preceding year, and to submit to Philips the details of any acquisitions, transfers, or disposals of its manufacturing equipment used for the manufacture of Licensed

Products, at the time of such acquisition, transfer, or disposal, as required by ¶ 6.01 of the ODS Agreement.

### Facts Relating to Patent Infringement Claim

52. The CD-Discs made and sold by ODS in the U.S. without paying royalties to Philips fall within the claims of the '846 patent. ODS's CD-Discs infringe at least claim 1 of the '846 patent.

53. ODS's license to make and sell such CD-Discs in the U.S. is contingent upon ODS's reporting and payment of royalties to Philips, as set forth in the ODS Agreement. Any CD-Disc made or sold before the '846 patent expired for which ODS failed to report and pay royalties when due was unlicensed.

54. As set forth in this Complaint, ODS made and sold CD-Discs covered by the '846 patent in the U.S. without reporting and paying royalties to Philips from April 1, 2005 through November 26, 2008.

55. Because ODS did not report and pay royalties to Philips and was in material breach of the ODS Agreement, as set forth in this Complaint, the CD-Discs made and sold by ODS since the breach began and up through November 26, 2008, when the '846 patent expired, were not Licensed Products, and were not licensed under the '846 patent, and therefore infringe such patent.

56. The John Doe Defendants acquired, made, used, and/or sold CD-Discs covered by the '846 patent in the U.S. without a license from Philips under the Licensed Patents, and/or without paying royalties to Philips.

## Count I
## Breach of Contract

57. Plaintiff repeats and realleges each and every allegation set forth in this Complaint.

58. The ODS Agreement and Side Letter are valid and subsisting agreements under New York law between Philips and ODS. Such ODS Agreement and Side Letter are supported by adequate consideration. Neither Philips nor ODS has terminated the ODS Agreement or Side Letter.

59. Under ¶ 13.06 of the ODS Agreement, New York law controls the construction of such Agreement.

60. ODS has materially breached the ODS Agreement and Side Letter by failing to report and pay royalties on its manufacture and sale of CD-Discs, as set forth in this Complaint, from April 1, 2005 through November 26, 2008.

61. ODS has further breached the ODS Agreement as alleged in ¶¶ 48-51 of this Complaint.

62. ODS has materially breached the ODS Agreement and Side Letter in other ways, the details of which are unknown at this time.

63. In view of ODS's breach of the ODS Agreement and Side Letter, Philips is entitled to receive (a) royalties for ODS's manufacture and sale in the U.S. of CD-Discs at the Standard Rates (3 cents (3¢) per CD-Audio Disc or CD-ROM Disc with an outer diameter greater than 90 mm, and 2 cents (2¢) per CD-Audio Disc or CD-ROM Disc with an outer diameter smaller than 90 mm) from April 1, 2005 through November 26, 2008, and (b) the difference between the Standard Rates and the Compliance Rates for all royalties paid at the Compliance Rates on or after the first day of the reporting period in which ODS was not in full compliance with all of its obligations under the Agreement and Side Letter.

64. Under ¶ 5.07 of the ODS Agreement, Philips is entitled to interest, accruing at the rate of 2% (two percent) per month, or the maximum amount permitted by applicable law, whichever is lower, on (a) all unpaid royalties, beginning on the first day of the reporting period in which ODS was not in full compliance with all of its obligations under the ODS Agreement and Side Letter, and (b) the difference between the Standard Rates and the Compliance Rates for all royalties paid at the Compliance Rates on or after the first day of the reporting period in which ODS was not in full compliance with all of its obligations under the ODS Agreement and Side Letter.

65. Under ¶ 13.04 of the ODS Agreement, ODS agrees that neither Philips' failure nor delay in enforcing any provision of such ODS Agreement shall constitute a waiver of such provision or of Philips' right to enforce any provision of such ODS Agreement.

66. Philips has suffered monetary and other damages, in an as-yet undetermined amount, as the direct and proximate result of ODS's material breach of the ODS Agreement and Side Letter.

## Count II
## Patent Infringement

67. Plaintiff repeats and realleges each and every allegation set forth in this Complaint.

68. In the alternative to Philips' breach of contract claim, ODS has infringed and is continuing to infringe, literally and/or under the doctrine of equivalents, the '846 patent by practicing one or more claims of the '846 patent in its manufacture, use, offering for sale, sale, and/or importation of products, and/or by inducing or contributing to the infringement of the '846 patent, under 35 U.S.C. § 271.

69. The John Doe Defendants have infringed and are continuing to infringe, literally and/or under the doctrine of equivalents, the '846 patent by practicing one or more claims of the '846

patent in their manufacture, use, offering for sale, sale, and/or importation of products, and/or by inducing or contributing to the infringement of the '846 patent, under 35 U.S.C. § 271.

70. The '846 patent was valid and subsisting during all times relevant to this action and was and is entitled to a presumption of validity for that time period, under 35 U.S.C. § 282.

71. U.S. Philips Corporation is the assignee of all rights, title, and interest in and to the '846 patent and possesses all rights of recovery under the '846 patent.

72. A Reexamination Request for the '846 patent was filed in the U.S. Patent and Trademark Office on December 8, 2004. Ex Parte Reexamination Certificate No. US 5,068,846 C1 (the "Reexamination Certificate"), confirming the patentability of claims 1 through 7 of the '846 patent, was issued by the U.S. Patent and Trademark Office on September 19, 2006. A true copy of the Reexamination Certificate is attached as **Exhibit E**.

73. ODS has had knowledge of the '846 patent at all times relevant to this action.

74. The infringement of the '846 patent by ODS has been and continues to be willful, and therefore Philips is entitled to treble damages under 35 U.S.C. § 284.

75. Philips has suffered monetary and other damages in an as-yet undetermined amount, and irreparable injury, as the direct and proximate result of the infringement of the '846 patent by ODS.

### Prayer for Relief

Wherefore, Philips requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including but not limited to a judgment and order as follows:

A. holding ODS liable for breach of contract;

B. in the alternative, holding ODS liable for patent infringement;

C. holding the John Doe Defendants jointly and/or severally liable for patent infringement;

D. directing ODS to pay to Philips its actual damages for:

    a. ODS's breach of contract; or

    b. in the alternative, ODS's patent infringement, under 35 U.S.C. § 284;

E. directing the John Doe Defendants to pay to Philips its actual damages for patent infringement, under 35 U.S.C. § 284;

F. directing ODS to pay:

    a. unpaid royalties at the Standard Rates for all CD-Discs made or sold by ODS in the U.S. beginning on the first day of the reporting period in which ODS was not in full compliance with all of its obligations under the ODS Agreement and Side Letter, through November 26, 2008, and

    b. the difference between the Standard Rates and the Compliance Rates for all royalties paid at the Compliance Rates on or after the first day of the reporting period in which ODS was not in full compliance with all of its obligations under the Agreement and Side Letter, through November 26, 2008;

G. directing ODS and the John Doe Defendants to pay Philips' other damages, including but not limited to direct, consequential, indirect, compensatory, and punitive damages;

H. directing ODS to pay interest, at least as follows:

    a. on all unpaid royalties, beginning on the first day of the reporting period in which ODS was not in full compliance with all of its obligations under the ODS Agreement and Side Letter; and

    b. on the difference between the Standard Rates and the Compliance Rates for all royalties paid at the Compliance Rates on or after the first day of the reporting period in which

ODS was not in full compliance with all of its obligations under the ODS Agreement and Side Letter;

I. holding that ODS's and the John Doe Defendants' patent infringement has been and continues to be willful, and trebling Philips' damages;

J. directing ODS and the John Doe Defendants to pay Philips' attorneys' fees and costs under 35 U.S.C. § 285;

K. directing ODS and the John Doe Defendants to pay prejudgment and post-judgment interest;

L. providing such other and further relief as this Court deems just and appropriate.

**Jury Trial**

Philips demands a jury trial on all claims set forth in this Complaint.

Date:   February 25, 2010

_____
Edward D. Johnson
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California 94306-2112
Tel: (650) 331-2000
Fax: (650) 331-2060

Christopher J. Houpt
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Tel: (212) 506-2380
Fax: (212) 849-5830

Vince P. Kovalick
John F. Hornick
Samuel C. Bass
Alicia Meros Carney
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
Tel: (202) 408-4000
Fax: (202) 408-4400

*Attorneys for Plaintiffs*
*Koninklijke Philips Electronics N.V. and*
*U.S. Philips Corporation*